Arthur Lee **RANEY** et al., Appellants,

v.

The **BOARD OF EDUCATION OF the GOULD SCHOOL DISTRICT,**
Appellee.

No. 18527.

United States Court of Appeals
Eighth Circuit.

Aug. 9, 1967.

Rehearing Denied Sept. 18, 1967.

---

Henry Aronson, New York City, for appellants; Jack Greenberg, James M. Nabrit, III, and Michael J. Henry and Michael Meltsner, New York City, John W. Walker, Little Rock, Ark., on brief.

Robert V. Light, Little Rock, Ark., for appellee; Herschel H. Friday, Little Rock, Ark., on the brief.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This timely appeal is taken from final judgment dismissing a class action brought by plaintiffs as parents and next friends of sixteen minor Negro students attending grades five, ten and eleven of the defendants' district Negro school against the Board of Education of the Gould School District pursuant to 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983, seeking injunctive relief. The prayer of the original complaint is to enjoin the defendant Board from:

"(1) requiring minor plaintiffs and all other similarly situated to attend the all-Negro Field School for the 1965–66 School Term;

(2) providing public school facilities for Negro pupils in Gould, Arkansas which are inferior to those provided for white pupils;

(3) expending any funds for operation or improvement of the predominantly white Gould Public Schools until and unless the Field School is made substantially equal in facilities, equipment, curriculum, advantages, oppor-

tunities, etc. to the predominantly white Gould schools; and

(4) otherwise operating a racially segregated school system."

At the close of all of the evidence, plaintiffs amended their complaint by striking item (3) above set out and substituting in lieu thereof:

"the prayer to have any future high school facilities in the Gould School System constructed on or near the premises of the present Gould high school, which is now attended predominantly by white pupils, * * *."

■ Upon appeal, plaintiffs again altered their position and urged that the Board be restrained from using the new building construction as a replacement for the Field High School and that instead, the building be converted into a unit of a completely integrated grade school. The issue last stated is raised for the first time upon appeal and was not presented to the trial court and no opportunity was afforded the parties to offer evidence on the feasibility of such a plan, nor was the trial court given any opportunity to pass thereon. It is fundamental that issues not presented to or considered by the trial court cannot be considered upon appeal.

The trial court, in our view, states the issues properly raised by this appeal as follows:

"The question before the Court is actually two pronged. First, is this Court authorized to tell the school board where to build or not to build a new school building, and second, should the Court do so under the circumstances in this case?"

The trial court on the first issue recognized that under appropriate circumstances a constitutionally discriminatory construction program could be enjoined, stating:

"However, this Court is not prepared to state that there might not be cir-

cumstances under which the Court would be justified in taking action such as that the plaintiff is asking for in this case. Assuming without deciding that this is an area of school policy-making which the Court could enter to protect the civil rights of the school district's citizens, this Court does not feel that the circumstances of this case merit such action."

Our recent decision in Kelley v. Altheimer, 8 Cir., 378 F.2d 483 (April 12, 1967), recognizes that a court may enjoin a construction program which is designed to perpetuate segregation. The supporting facts in *Altheimer* are far stronger than those in our present case. We recognized in *Altheimer* that injunctive relief against construction could not be effective after a building is constructed. Such appears to be the situation here.[1]

■ The trial court as a basis for its refusal to exercise its equitable powers to grant the injunction requested states:

"Here the school board has begun a desegregation program for all twelve grades without having been ordered to do so by a court. The delay in the program for the three grades involved in this case is temporary and future plans call for complete integration. The fact that the Negro children who are attending the previously all-white schools are participating in the school's curricular and extra-curricular activities seems to indicate that this plan is more than a pretense or sham to meet the minimum requirements of the law.

"The availability of campus area in one place and not the other, the lack of funds to procure more land, and the necessity of locating the new high school near the existing gymnasium designed to accommodate the high school students are all valid reasons for the administration's decision as to the location of the new high school. There is no reason to assume that only

1. Attached to plaintiffs' brief is an affidavit of their attorney dated April 28, 1967 which states that the building in controversy is under construction and from which it would appear that considerable progress had been made upon such construction.

Negro students will attend the new high school. In fact, it is a virtual certainty with the progress of integration, building space limitations alone will insure that the new school will be integrated. Certainly these reasons, coupled with the school board's recent initiative toward integrating the schools, do not indicate that the board's plans are solely motivated by a desire to perpetuate or maintain or support segregation in the school system. Therefore, the Court will not usurp the normal managerial prerogative of the school board to the extent of determining where the new building will be located."

We note that the Field High School which was being replaced is the oldest building in the school system. The bulk of the evidence in this case is directed at its many deficiencies and dilapidated condition. The Negro segment of the community had for years been insisting that a replacement of such building be made and continued to assert such position throughout the trial and at least until the amendment made at the close of all of the evidence hereinabove set out. Reference is made in plaintiffs' testimony to an alleged prior action which purported to require the Board to give priority to the upgrading of the Field High School and the Board's commitment so to do. The evidence discloses that the district is weak financially and that prior construction was largely prevented by statutory limitations upon bonded indebtedness. It would appear that such obstacle would be cleared up by the completion of payments on prior bonded indebtedness by 1967. There is absolutely nothing in the record to indicate the nature of the plans for the new high school building under construction on the Field elementary school grounds. The evidence does disclose that a gymnasium and certain other facilities on such ground already in existence had been used and would continue to be used by students in the Field High School. Moreover, there is no showing that the Field facilities

with the new construction added could not be converted at a reasonable cost into a completely integrated grade school or into a completely integrated high school when the appropriate time for such course arrives. We note that the building now occupied by the predominantly white Gould grade school had originally been built to house the Gould High School.

As pointed out by the trial court, the defendant Board had voluntarily adopted a desegregation plan for the schools which it operates, the plan to be in effect in September 1965. Such plan went considerably beyond the minimum requirements of the Department of Health, Education and Welfare (H.E.W.), providing for immediate unrestricted freedom of choice of school attendance on the part of all students, and provision was also made for faculty desegregation. The desegregation plan is similar to a plan we indicated would be approved in Kemp v. Beasley, 8 Cir., 352 F.2d 14.

Subsequently, when the students exercised the freedom of choice provided for by the plan, it developed that grades five, ten and eleven would be seriously overcrowded which led to an amendment making the freedom of choice inoperative for the 1965–66 school year with respect to grades five, ten and eleven but fully effective thereafter. The plan as amended was approved by H.E.W. As stated in Kemp v. Beasley, supra, final responsibility for determining the constitutionality of desegregation plans rests with the court but H.E.W. guidelines are entitled to considerable weight.

In Clark v. Board of Education of Little Rock Sch. Dist., 8 Cir., 374 F.2d 569, we approved a freedom of choice plan similar to that adopted by the Board here. We stated:

"[W]hen a student is given a well publicized annual right to enter the school of his choice, coupled with periodic mandatory choices as set forth in the Board's amended plan, we can find on the face of it no unconstitutional state action. * * *

Therefore, if in fact all the students wishing to transfer were fully accommodated, the Constitution would unquestionably be satisfied, and apparently under these circumstances petitioners would have little objection to the plan's operation. * * *" 374 F.2d 569, 571–572.

We recognized in *Clark* that a plan appropriate on its face could be unconstitutionally administered and observed that in case of such a development, the District Court upon appropriate application could do what is necessary to bring the plan up to constitutional standards.

Prior to 1965, the defendant District had operated an all-Negro school known as the Field school and an all-white school known as the Gould school on a segregated basis. The district is a predominantly agricultural district with little industry. The population is approximately 3,000 of which 60% are Negro. There are about 880 students in the system of which 580 are Negro.

Under the freedom of choice plan adopted, all students expressed their attendance preference. Seventy-one Negroes who expressed a preference for the Gould school were accepted for attendance at that school. All preferences except those for overcrowded grades five, ten and eleven were fully respected. Twelve of the forty Negro students applying were accepted in grades five, ten and eleven. Those who were accommodated at Gould lived the greatest distance from Field. Under the plan all preferences

are to be honored commencing with the 1966–67 school year.

The evidence shows that the defendant Board has taken substantial steps to narrow the gap between the salaries paid to white and Negro teachers and that any discrepancy in this respect will be completely eliminated by the 1966–67 school year. The superintendent as a witness also stated that no teachers would be discharged as a result of the integration. It also appears that the transportation of pupils has been integrated.

The enrollment at the Gould school in 1965–66 consisted of 71 Negro students and 298 white students. Thus substantial progress toward integration has been made in the first year of the plan's operation. With the restricted grades open for freedom of choice and upon the basis of the favorable acceptance of the Negro students at the Gould school, it is reasonable to anticipate that integration will rapidly progress as predicted by the trial court.

The complaint charges coercion has been used against integration. The Chief of Police of Gould was named as a defendant on this charge. The case was voluntarily dismissed by the plaintiffs against him. There is no substantial evidence that any coercion was exercised to deter Negro students from electing to attend the white school. The record fairly shows that the integration plan has operated smoothly and that the Negro students have been encouraged to elect the white school.[2]

2. The testimony of the president of the school board includes the following:
"We have had wonderful cooperation out of the white people and the colored people. I'd say that we have got ninety-five percent of the cooperation out of both sides. And the Board as a whole—if I might elaborate just a little—has gone out of our way in going to athletics—not just the Board, but all the people, to go to our athletic program, or any social functions and to discourage any violence or any nagging, or anything of that nature, not only with the white patrons, but the colored patrons, we've had wonderful cooperation. We've got a small minority that's

not interested in our schools or our people or our economy or our welfare that don't even have kids. We haven't had any trouble out of people that's got kids that's going to school—colored or white. We've had wonderful cooperation out of them.
\* \* \* \* \*
"Q. Do you have any knowledge of any such coercion or undue influence attempted to be exercised with respect to the students making their choices, that are allocated under this plan, by any employees or representatives of the Gould School District?
A. None whatever, by no member of the faculty, no member of the School

■ The trial judge by reason of his presence at all stages of the trial has the feel of the case. The court's findings are based upon substantial evidence and are not clearly erroneous. Moreover, the trial court has a large discretion in determining whether an injunction should be granted. See 43 C.J.S. Injunctions §§ 14, 15, and cases there cited.

Plaintiffs have failed to demonstrate that the trial court abused its discretion in denying the injunction here sought.

■ Plaintiffs alternately upon this appeal ask us to issue a comprehensive decree governing the desegregation process similar to that in Kelley v. Altheimer, supra. The record in this case does not warrant such relief. Unlike the Altheimer situation, no attack has been made in the pleadings on the desegregation plan adopted by the Board. Additionally, we find no substantial evidence to support a finding that the Board was not proceeding to carry out the plan in good faith.

■ Primary responsibility for the operation of the public schools rests in the school board. Courts are not equipped to solve the everyday problems of school operation. The court's interference with the Board's operation of its school is justified only upon a showing that the Board in its operation of its school is depriving pupils of rights guaranteed by the federal constitution.

In Brown v. Board of Education of Topeka, 349 U.S. 294, 299, 75 S.Ct. 753, 757, 99 L.Ed. 1083, the Court states:

"School authorities have the primary responsibility for elucidating, assessing and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. Because of their proximity to local conditions and the possible need for further hearings, the courts which originally heard these cases can best perform this judicial appraisal."

In our present case, no issue on the adequacy of the plan adopted by the Board or its implementation was raised in the District Court. Issues not fairly raised in the District Court cannot ordinarily be considered upon appeal. Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037; Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996; Smith v. American Guild of Variety Artists, 8 Cir., 368 F.2d 511, 514.

The judgment is affirmed.[3]

---

Board, or no farmers. In fact we have encouraged colored people to send their kids up to the white school. To the contrary, they have failed and refused— people that we thought we could talk with if something come up, that we could adjust the situation. There hasn't been any economic pressure put on. Almost every member of this Board has got colored people living on their farm that have colored children in the white schools."

3. The evidence in this case was taken on November 24, 1965. Due to disability of the reporter, the preparation of the transcript of testimony was delayed and this has delayed the appeal. Since the hearing in the trial court, the 1966–67 school year has been completed and the 1967–68 year is about to commence. Our decision is based upon the record before us If subsequent evidence should prove that the defendant Board is not fairly administering its integration plan, resort to the equitable powers of the District Court is open to any aggrieved party.