**Lela Mae HANEY et al., Appellants,**

v.

**COUNTY BOARD OF EDUCATION OF SEVIER COUNTY, ARKANSAS, et al., Appellees.**

**No. 19404.**

United States Court of Appeals Eighth Circuit.

May 9, 1969.

Franklin E. White, New York City, for appellants; Norman J. Chachkin, Little Rock, Ark., Jack Greenberg and Michael Meltsner, New York City, and John W. Walker, Little Rock, Ark., were with him on the brief.

John B. Hainen, DeQueen, Ark., for appellees.

Merle W. Loper, Atty., Dept. of Justice, Washington, D. C., for the United States as amicus curiae; Stephen J. Pollak, Asst. Atty. Gen., and Nathan Lewin, Atty., Dept. of Justice, Washington, D. C., and Charles M. Conway, U. S. Atty., Fort Smith, Ark., were with him on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

This is an appeal from a decree of the District Court in the Western District of Arkansas dismissing a complaint brought upon behalf of several plaintiffs, Negro parents and children to enjoin the continued maintenance of a racially segregated system of public education in Sevier County in Southwestern Arkansas. The defendants are the County Board of Education of Sevier County, the County Supervisor of Education of Sevier County, the Lockesburg School District No. 16 and the Sevier County School District No. 1. All of the defendants, including the all-Negro school board of Sevier, resist consolidation and

integration of their schools. The district court held that the all-Negro school of Sevier County School District No. 1 and the all-white Lockesburg School in the same county, approximately one-half mile away, were not "segregated" schools since they existed in separate school districts and their district lines were not gerrymandered for racial reasons. We reverse and remand with directions to the parties and the district court to effectuate a plan so that the schools in Sevier County shall operate on a "racially nondiscriminatory" and fully integrated basis of faculty and students for the school year 1969–70. See Cato v. Parham, 403 F.2d 12 (8 Cir. 1968).

In 1948 the Arkansas legislature directed all school districts having fewer than 350 children to consolidate into one county school district. The new school district in each county was to be called "the * * * County School District No. * * *." The County School Supervisor was designated to be the superintendent of the new district. Ark. Stat.Ann. § 80–427 (Repl. 1960). The legislature also provided, however, that the small school districts which would be dissolved by the Act could be reorganized or annexed, with the approval of the County Board of Education and the electorate of the school district to which annexation was proposed, and thereby avoid being consolidated into the county school district. Ark.Stat.Ann. §§ 80–426, 80–428 (Repl. 1960).

In Sevier County, there existed some fourteen different school districts in 1948. After annexations and reorganizations into newly formed school districts, there remained three small Negro districts which were consolidated under the Act to become Sevier County School District No. 1. Under the reorganized plan, Negro children in the all-white Lockesburg School attended Sevier County School District No. 1. In 1954 and 1955 the Superintendent of the Lockesburg district circulated a petition to get the consent of the Negro property owners living in the Lockesburg district to transfer their property to the Sevier district. The transfers were approved by the Sevier County Board of Education. This resulted in the Sevier School District having noncontiguous and irregularly shaped geographical areas. See Appendix "A" of map attached. Notwithstanding the advent of Brown v. Board of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, 38 A.L.R.2d 1180 (1954) and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), these schools have unfortunately remained separated by their racial identity to the present time.

The Lockesburg School District has always denied requests from Negro parents to cross district lines and attend the all-white school. There are now approximately 318 white children attending the one twelve-grade Lockesburg School, with fourteen white teachers serving all twelve grades. The Lockesburg district extends approximately fifteen miles north to south and three to eight miles east to west. Two noncontiguous areas, each approximately twelve miles square, compose the Sevier County School District No. 1. These two areas are approximately two miles apart, and each is almost entirely surrounded by the Lockesburg School District. The Sevier School also has one twelve-grade school with 181 school children attending. Ten teachers are employed by Sevier County School District No. 1. A dual system of transportation is maintained with buses of each district traveling the same roads and crossing district lines to get to the respective schools.

Both Lockesburg elementary and high schools are rated "A" by the Arkansas State Department of Education. Sevier County elementary school has an "A" rating, whereas the high school has only a "C" rating. Extended testimony reflecting the quality of education, the economic status, etc., to justify the continuance of Sevier County School District No. 1 is offered. This testimony is no longer to the point under the charge of segregation in public schools. The doctrine of "separate but equal" is no longer a relevant concept under Brown I.

The district court premised its conclusion that Sevier School District No. 1 is not segregated on a finding that it "was not created for the purpose of creating a segregated school." The trial court reasoned that it was created under Initiated Act No. 1 of 1948 (Ark.Stat. Ann. §§ 80–426 to –429 (Repl. 1960)) and that the sole purpose of the Act was the consolidation of smaller districts into larger districts. The trial court thus concluded that there is no proof of gerrymandering to effect segregation. The court further observed that Sevier School District No. 1 would allow white children to attend if any lived in the district. The court summarized:

"Since the school is not a separate school but is the one and only school maintained by the district and is the only school in the attendance zone of the district,

"Since the school district does not practice segregation as a policy,

"Since it has admitted all school children regardless of color and is still willing to do so,

"Since the school is not an unequal or inferior school, and

"Since an all Negro faculty, in the absence of proof to the contrary, is not proof of an inferior or segregated school,[1]

"THEREFORE, the Court concludes that Sevier County School District No. 1 is not a segregated school."

Furthermore, the district court observed that the Lockesburg district voted in favor of consolidation with the Sevier district. The court concluded that the Sevier district evidently "does not *choose* to consolidate" on the basis that the matter never came to a vote in the Sevier district. The district court then noted that consolidation of two school districts is prohibited under Arkansas law unless the electorate of both school districts consent to it. See Ark.Stat.Ann. § 80–420 (Repl. 1960).

■ We cannot accept the district court's reasoning. The actions of either a local school board, white or black, or the state legislature are subservient to the equal protection clause of the Constitution of the United States.

The contention that the school districts herein involved are not segregated as a matter of law is untenable. The short and quick answer to the argument that they were created for purposes other than racial separation by the Initiated Act of 1948 is that it patently overlooks the then existing state law requiring segregation of public schools.

Section 80–426 which authorized the reorganization of county school districts, by which Sevier County School District No. 1 was created, specifically required that the reorganization be "in accordance with existing law." Section 80–509 required at that time that separate schools "for white and colored persons" be established by the board of school directors of each district. In reorganizing the fourteen separate school districts exist-

---

1. We said in Cato v. Parham, 403 F.2d 12, 15 n. 7 (8 Cir. 1968):

"In the trial below the board's attorney examines the witnesses: 'What irreparable harm is going to come to any Negro school student * * * if he does not have a white teacher?' The clear answer is anticipated; 'no harm' —thus, it is urged that the case for continued segregation of faculty is proven. Both the question, as well as the answer, conveniently ignore what 'desegregation' is all about. White teachers 'harm' neither the white student nor the black—nor can a teacher possibly harm students of either race merely because he is Negro. The evil is the concentrated grouping of teachers by race which brands the school as 'white' or 'Negro' rather than as a non-racial institution of learning for all. One of the basic reasons freedom-of-choice plans usually fail is because 'the predominant race of the students attending a particular school continues to serve as the predicate for the Board assignment of a teacher * * *' and 'a predominantly Negro faculty continues to create a pervasive influence on the students' choice of schools. * * *' Kemp II, [Kemp v. Beasley] 389 F.2d [178] at 190. All students have a constitutional right to go to a common school and to be taught by a common faculty of both races."

ing in Sevier County in 1948, the County Board of Education *was required* to adhere to the state law. It is noteworthy that in doing so, school districts in Sevier County were conveniently reorganized to reflect facile compliance with the segregation policy and law of the state. Of the fourteen districts then existing in Sevier County, five all-white districts were annexed to larger white districts. Two of these districts were annexed to Lockesburg. Two districts which were all Negro were annexed to Negro schools in an adjoining county. Four districts, including Lockesburg with its newly annexed districts, had more than 350 students and retained their identity.[2] The remaining three Negro districts combined to form Sevier County School District No. 1.

◼ It is true Arkansas law did not require school *districts* to be separated by race. But the fact that the various reorganized districts in Sevier County reflect a bi-racial system of education by district lines must be accepted as more than mere coincidence. It is readily apparent that the Sevier County Board of Education approved reorganization of districts along district lines which facilitated the segregated system of public education then required by Arkansas law. It would be sheer fantasy to say that the school districts in Sevier County could be realigned today in the same manner that they were in 1948 and still comply with the constitutional mandate of *Brown I* and *II*. School district reorganization took place under the color of state law that then required segregated schools. Under these circumstances, when the resulting district lines drawn reflect a discriminatory pattern, *de jure* segregation is established. Simply to say there was no intentional gerrymandering of disstrict lines for racial reasons is not enough. As Mr. Justice Harlan once observed, "[T]he object or purpose of

legislation is to be determined by its natural and reasonable effect, whatever may have been the motives upon which legislators acted." New York ex rel. Parke, Davis & Co. v. Roberts, 171 U.S. 658, 681, 19 S.Ct. 58, 76, 43 L.Ed. 323 (1898) (dissenting opinion). *Brown II* recognized that "school districts and attendance areas" as well as "local laws and regulations" would have to be "revised" to achieve a unitary statewide school system. 349 U.S. at 300–301, 75 S.Ct. 753, 99 L.Ed. 1083.

If segregation in public schools could be justified simply because of pre-*Brown* geographic structuring of school districts, the equal protection clause would have little meaning. Such a position "would allow a state to evade its constitutional responsibility by carve-outs of small units." Hall v. St. Helena Parish School Bd., 197 F.Supp. 649, 658 (E.D.La. 1961), aff'd 287 F.2d 376 (5 Cir. 1961), aff'd per curiam, 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521 (1962). See also Taylor v. Board of Educ., 191 F.Supp. 181 (S.D.N.Y. 1961), aff'd, 294 F.2d 36 (2 Cir. 1961); Blocker v. Board of Educ., 226 F.Supp. 208 (E.D.N.Y. 1964). More ingenious methods have been tried and have failed. Cf. Poindexter v. Louisiana Financial Assistance Comm'n, 275 F.Supp. 833 (E.D.La. 1967), aff'd per curiam, 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968).

State legislative district lines, congressional districts and other state political subdivisions have long ago lost their mastery over the more desired effect of protecting the equal rights of all citizens. In Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), where the state legislature redefined the city boundaries of Tuskegee, Alabama, thus disenfranchising 400 Negro voters, the Court observed:

"While in form this is merely an act redefining metes and bounds, if the allegations are established, the ines-

---

2. These districts were all white, with the exception of a few Negro families which already lived in the Haskin and DeQueen areas. Up until 1965 these scattered Negro students living in the Haskin and DeQueen areas were sent to the Sevier County School District No. 1.

capable human effect of this essay in geometry and geography is to despoil colored citizens, and only colored citizens, of their theretofore enjoyed voting rights." Id. at 347, 81 S.Ct. at 130.

Political subdivisions of the state are mere lines of convenience for exercising divided governmental responsibilities. They canot serve to deny federal rights. See e. g., Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Hall v. St. Helena Parish School Bd., supra.

Apropos is the language of Cooper v. Aaron, 358 U.S. 1, 16–17, 78 S.Ct. 1401, 1408–1409, 3 L.Ed.2d 5, 19 (1958):

"The situation here is in no different posture because the members of the School Board and the Superintendent of Schools are local officials; from the point of view of the Fourteenth Amendment, they stand in this litigation as the agents of the State.

\* \* \* \* \* \*

"The controlling legal principles are plain. The command of the Fourteenth Amendment is that no 'State' shall deny to any person within its jurisdiction the equal protection of the laws. 'A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, \* \* \* denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning.' Ex parte Virginia, 100 U.S. 339, 347, [25 L.Ed. 676]. Thus the prohibitions of the Fourteenth Amend-

ment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, see Virginia v. Rives, 100 U.S. 313 [25 L.Ed. 667]; Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230 [77 S.Ct. 806, 1 L.Ed.2d 792]; Shelley v. Kraemer, 334 U.S. 1, [68 S.Ct. 836, 92 L.Ed. 1161], or whatever the guise in which it is taken, see Derrington v. Plummer, 5 Cir., 240 F.2d 922; Department of Conservation and Development v. Tate, 4 Cir., 231 F.2d 615. In short, the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the *Brown* case can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted 'ingeniously or ingenuously.' Smith v. Texas, 311 U.S. 128, 132, [61 S.Ct. 164, 85 L.Ed. 84]."

This leads us to the second concern of the district court: that only the consent of the electorate of the two districts can bring about consolidation of school districts. Although not relevant to our decision here, this conclusion overlooks another section of Arkansas school law which would permit consolidation with Lockesburg district of the new school district (Sevier) upon vote of only the electorate of Lockesburg district if the county board approves. Ark.Stat. Ann. § 80–428 (Repl. 1960). However, this merely points up a possible solution within existing state law. The argument that "equal protection" rights must depend upon the majority vote has never found foothold under our form of constitutional government. Democratic government under our Constitution respects the majority will, but our forefathers had sufficient vision to ensure that even the many must give way to certain fundamental rights of the few. See, e. g., Federalist Papers, No. 10 (Madison) and

No. 51 (Madison).[3] The very origin of our Bill of Rights draws its history from this early concept. West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674 (1943). As the Supreme Court has stated: "A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be." Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 736–737, 84 S.Ct. 1459, 1474, 12 L.Ed.2d 632 (1964).

■■ Separatism of either white or black children in public schools thrives only upon continued mistrust of one race by another. It reflects a continuum of the fallacious "separate but equal" doctrine, which the law now acknowledges serves only as a sleeping sickness, whether it be engendered by the white or black. Separatism is just as offensive to the law when fostered by the Negro community as when the white community encourages it. Perpetuation of a biracial school system moves only toward further intolerances and misunderstandings. The law can never afford to bend in this direction again. The Constitution of the United States recognizes that *every* individual, white or black, is considered equal before the law. As long as this principle is viable, full equality of educational opportunity must prevail over theoretical sociological and genetical arguments which attempt to persuade to the contrary. In Dove v. Parham, 282 F.2d 256, 258 (8 Cir. 1960), this court stated:

"Standards of placement cannot be devised or given application to preserve an existing system of imposed segregation. Nor can educational principles and theories serve to justify such a result. These elements, like everything else, are subordinate to and may not prevent the vindication of constitutional rights."

We find as a matter of law that the school district lines of Sevier County were created to reflect racial separation by schools. The 1954–55 transfer of the Negro properties from the all-white Lockesburg School District to the non-contiguous district of Sevier County No. 1 cannot withstand the charge of segregation leveled here. Based upon the finding that these school districts were originally segregated under color of existing state law, the defendants here are charged with the affirmative duty fully and effectively to integrate their schools, faculties and transportation facilities. Green v. County School Bd., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Raney v. Board of Educ., 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed. 2d 727 (1968); Monroe v. Board of Comm'rs, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968).

■ We continue this court's past policy of placing full confidence in the district court, with anticipated cooperation of the local boards and officials to achieve an integrated school system in Sevier County. See Cato v. Parham, 403 F.2d 12 (8 Cir. 1968); Kemp v. Beasley, 389 F.2d 178 (8 Cir. 1968). We observe, however, that the time for transition has now passed and that these problems should have been worked out long ago. We reverse and remand with directions that the County Board of Education of Sevier County present a work-

3. Madison wrote:
"Justice is the end of government. It is the end of civil society. It ever has been and ever will be pursued until it be obtained, or until liberty be lost in the pursuit. In a society under the forms of which the stronger faction can readily unite and oppress the weaker, anarchy may as truly be said to reign as in a state of nature, where the weaker individual is not secured against the violence of the stronger; and as, in the latter state, even the stronger individuals are prompted, by the uncertainty of their condition, to submit to a government which may protect the weak as well as themselves; so, in the former state, will the more powerful factions or parties be gradually induced, by a like motive, to wish for a government which will protect all parties, the weaker as well as the more powerful." Federalist Papers No. 51.

able plan to effectuate a completely non-racial school system in Sevier County for the school term of 1969–70. This plan shall be submitted and approved according to a time schedule to be set by the district court in order for all parties to comply with the above mandate.

Attorney fees are denied to plaintiffs, without prejudice to submit charges for future fees to the district court.

Judgment reversed and remanded in accordance with this opinion.

MEHAFFY, Circuit Judge, concurs in the result.

APPENDIX "A"