Alesia Lee FITZPATRICK et al.,
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION, CITY OF
ENID PUBLIC SCHOOLS, et al.,
Defendants-Appellees.

No. 76–1866.

United States Court of Appeals,
Tenth Circuit.

June 7, 1978.

Jethro Currie, Oklahoma City, Okl., for plaintiffs-appellants.

Edward E. Soule, Oklahoma City, Okl., for defendants-appellees.

Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges. ·

McKAY, Circuit Judge.

This is a civil rights action commenced in January 1976 by black students in the Enid School District (District), as representatives of their class, challenging the desegregation activities of the Board of Education of Enid, Oklahoma (Board). The trial court held that the evidence did not establish any violation of the Civil Rights Acts of 1866 and 1871 (42 U.S.C. §§ 1981, 1983 (1970)) and entered judgment for defendants.

On appeal, plaintiffs claim that the trial court erred in denying their motion for leave to amend their complaint to join the United States Department of Health, Education and Welfare (HEW) as a necessary defendant pursuant to Rule 19 of the Federal Rules of Civil Procedure, that the judgment should not have been entered before subpoenaed witnesses from HEW could present evidence and that the court erred in declaring that the defendants' employment practices and desegregation activities did not violate the Civil Rights Acts of 1866 and 1871.

The student population of Enid is overwhelmingly white. Only six percent of the students are black and they live almost exclusively in a small part of the city known as Southern Heights. That fact appears to have contributed significantly to the difficulties encountered by the Board in developing integration programs, particularly with respect to the necessity to close schools to accomplish integration of the District.

Before the Supreme Court decision in *Brown v. Board of Educ.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the Enid public schools were segregated as required by Oklahoma law. The first substantive effort toward integrating the District occurred in 1959 with the closing of the all black Booker T. Washington Junior-Senior High School. Thereafter, all high school students in the District attended one integrated high school, the junior high students were assigned to integrated junior high schools and all elementary students, regardless of race, were assigned to "neighborhood schools." In 1968, when the failure of the neighborhood schools approach to integrating the elementary schools was apparent, the Board developed a new integration plan under which the three smallest elementary schools in the District were closed. One school, Jefferson, was located in a predominantly white neighborhood while the other two, Carver and Jackson, were located in predominantly black areas. Thereafter, black students were assigned to elementary schools throughout the District and bussing was provided for students who lived beyond walking distance from their assigned schools. This plan was approved by HEW in a letter dated April 24, 1970.

By a letter dated May 9, 1975, HEW notified the defendant District concerning the decision in *Adams v. Weinberger*, 391 F.Supp. 269 (D.D.C.1975), which prohibited a "20 percent disproportion" in any school. Since only six percent of the students in the District were black, any school wherein more than 26 percent of the students were black would violate the *Adams* standard. In May of 1975 only the Roosevelt Elemen-

tary School, with 54.5 percent white and 45.5 percent minority students, was in violation of the *Adams* guidelines. The enrollment at Roosevelt had dropped from a high of 237 during the 1967–68 school year to 123 in May of 1975. The Enid Superintendent of Schools testified that even before the HEW letter of May 9 the District had been studying Roosevelt because of its small size, shrinking enrollment and high cost per pupil. On June 23, 1975, the Board met to consider the alternatives of closing Roosevelt or bussing enough white students to Roosevelt to reduce the percentage of minority students to satisfy the 20 percent disproportion rule. The first proposal involved no acquisition of additional classroom facilities and the bussing of only 25 students, 13 white and 12 black, to McKinley School. The alternative proposal would have required the acquisition of three portable classrooms and two busses to transport an additional 102 white students. The Board decided to close Roosevelt. School boundaries were realigned to allow most of the Roosevelt students to attend Garfield School which is located three blocks from Roosevelt. After the realignment there remained the 25 students who were bussed to McKinley School. HEW approved this desegregation plan in a letter dated September 12, 1975. This action was commenced the following January.

■ At the final pretrial conference plaintiffs' motion requesting leave to amend their complaint to add HEW as a defendant was denied. Although during the trial plaintiffs' counsel indicated the reason for seeking to join HEW was to permit cross-examination of HEW officials, the reason for the requested joinder expressed in the motion itself was that defendants' answer alleged that defendants' policies and actions were approved by HEW. Rule 19(a) of the Federal Rules of Civil Procedure provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Since there was no showing or assertion that a final decree could not be entered without the presence of HEW as a party defendant, that such a decree would adversely affect an interest of HEW or would be "wholly inconsistent with equity and good conscience," joinder was not mandatory. *Reid v. Reid,* 269 F.2d 923, 926–27 (10th Cir. 1959); *see Turner v. Brookshear,* 271 F.2d 761, 764 (10th Cir. 1959). The trial court's refusal to permit joinder to facilitate cross-examination cannot be considered an abuse of discretion.

■ Plaintiffs issued a subpoena for HEW witnesses and files to appear at the trial. On the day of the trial an Assistant United States Attorney informed the court that HEW had been unable to comply with the subpoena. Plaintiffs did not request a continuance, but the trial judge nonetheless declared that he would not close the case until he heard the HEW evidence if he believed it to be necessary. At the close of the plaintiffs' case, counsel reiterated his desire to call the unavailable HEW witnesses and declared that he reserved the right to present their testimony at a later date. The judge inquired of plaintiffs' counsel at that time regarding the apparent sufficiency of defense exhibits to express the opinion of HEW. The only rationale expressed by plaintiffs' counsel regarding the necessity of questioning HEW witnesses was that the documents had not been subjected to the scrutiny of cross-examination. At the close of defendants' evidence, the trial judge inquired as to whether the parties were prepared to rest. When no response was heard, the judge declared that he understood that the parties had rested and en-

tered his ruling in favor of defendants. Plaintiffs did not object when the trial judge declared that he understood the parties to have rested. If plaintiffs still desired to interrogate HEW witnesses they should have so informed the court at that time to allow the trial judge to correct the error complained of here by reserving his judgment until after the appearance of HEW witnesses. *E.g., Colonial Refrigerated Transp. Inc. v. Mitchell,* 403 F.2d 541, 552 (5th Cir. 1968); *National Fire Ins. Co. v. School Dist. No. 68,* 115 F.2d 232, 234 (10th Cir. 1940). The trial judge had already indicated his willingness to take such action. Inasmuch as the trial judge entered his judgment immediately upon the close of the case, we must presume he concluded that plaintiffs had waived their prior reservation of the right to call HEW witnesses when they unconditionally rested at the close of the case or that the HEW evidence was not material.

Turning from the claims of procedural error to the merits of plaintiffs' action, the evidence clearly shows that the District has integrated its schools. In fact, during the trial, plaintiffs' counsel declared:

> Your Honor, it just happens that in this case we are not complaining about the Enid School Board integrating. We think they've done a pretty good job, almost as good as the Finger Plan. It's the method that they went about it that we're complaining of and these plaintiffs do object.

Record, vol. 3, at 85.

As indicated, it is not integration but rather method of which plaintiffs complain. They argue three faults in the Board's actions and inactions: (1) failure to keep open any schools in Southern Heights; (2) accomplishing integration by methods which result in a higher proportion of black students being bussed than white students; and (3) failure to implement an effective affirmative action hiring program for teachers and staff.

The trial judge declared the applicable statute of limitations to be two years. That determination is not attacked on appeal.

*See Crosswhite v. Brown,* 424 F.2d 495, 496 (10th Cir. 1970). Thus, although earlier activities of the school board were properly admissible as bearing on historical context and intent, the only actions or inactions properly in issue are those postdating January 1974: (1) the closing of Roosevelt School in 1975; (2) the Board's refusal to reopen Carver School; (3) the bussing of a higher ratio of black students than white; and (4) the Board's failure to employ more black faculty and staff.

■ In determining whether an integration plan involving school closures violates constitutional and statutory safeguards, courts have considered six factors: (1) the existence of valid nonracial educational reasons for closing school facilities located in predominantly black areas; (2) the condition and adequacy of the facilities at the school being closed; (3) whether the facilities to which the minority students were being transferred were adequate and whether the transfer would cause those facilities to be "overtaxed"; (4) whether the primary or sole reason for the school board's action was the fear that less constitutionally suspect solutions to segregation would lead to "white flight" from the school district; (5) whether the entire or primary burden of integration is placed on black students and teachers; and (6) whether the school board considered alternatives which did not require the closure of predominantly black schools before making a final decision. *See Lee v. Macon County Bd. of Educ.,* 448 F.2d 746 (5th Cir. 1971); *Bell v. West Point Mun. Separate School Dist.,* 446 F.2d 1362 (5th Cir. 1971); *Allen v. Asheville City Bd. of Educ.,* 434 F.2d 902 (4th Cir. 1970); *Carr v. Montgomery County Bd. of Educ.,* 429 F.2d 382 (5th Cir. 1970); *Chambers v. Iredell County Bd. of Educ.,* 423 F.2d 613 (4th Cir. 1970); *N.A.A.C.P. v. Greater Johnstown, Pa. School Dist.,* 361 F.Supp. 1333 (W.D.Pa.1973); *Gordon v. Jefferson Davis Parish School Bd.,* 330 F.Supp. 1119 (W.D.La.), *aff'd,* 446 F.2d 266, 268 (5th Cir. 1971); *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 328 F.Supp. 1346 (W.D. N.C.1971), *aff'd,* 453 F.2d 1377 (4th Cir.

1972); *Brice v. Landis,* 314 F.Supp. 974 (N.D.Cal.1969); *Smith v. St. Tammany Parish School Bd.,* 302 F.Supp. 106 (E.D.La. 1969), *modified,* 316 F.Supp. 1174 (E.D.La. 1970). No one of these factors, standing alone, is necessarily determinative.

■ In this case, the Board had an apparently nonracial educational justification for closing Roosevelt. The record clearly shows that the Roosevelt school building was old, enrollment had decreased substantially over the past several years and the cost per pupil at Roosevelt was substantially higher than at the larger schools in the District. Standing alone, however, that economic justification may not withstand plaintiffs' attack. In response to the argument that the closing of a predominantly black elementary school was justified by the low enrollment per grade and consequent high educational cost per pupil, the court in *Brice v. Landis,* 314 F.Supp. at 976–77, stated:

A more reasonable inference from the record is that the unusually large number of teachers and other employees at [the black school] has been caused, not so much by law enrollment per grade, but by the more intensive instruction generally required for educating an all-minority, often underprivileged student body.

In this case, there was nothing in the record to lead the trial judge to that inference. Particularly in light of the fact that at the time of closing Roosevelt was predominantly white, we cannot say that the trial judge abused his discretion in accepting defendants' asserted reasons for the school closing.

■ The *Brice* court recognized the key question in a case such as this to be an inquiry by the trial court to determine whether the school district's plan is a good faith, reasonably adequate plan, under the circumstances, to implement applicable constitutional principles and whether the district considered available alternative options and courses of action. In that context, "the bussing of negro children to achieve integration, when the circumstances so require, is not in itself discrimination." *Id.* at 977–78.

The facts regarding the closure of Roosevelt in 1975, as they relate to issues considered in previously cited cases, are: (1) there were apparently valid nonracial reasons for closing Roosevelt; (2) the Roosevelt building was old, but it is not clear from the record that it was inadequate; (3) there are no allegations that the two facilities to which the Roosevelt students were transferred were not adequate and there is no evidence of overcrowding due to the transfer; (4) although there is some testimony in the record regarding "white flight" and it may be inferred that considerations of "white flight" may have played some part in the Board's decision, there is no evidence that it was the primary or even a substantial reason for closing Roosevelt; (5) while the primary burden of integration pursuant to school closures in 1959 and 1968 may have fallen on blacks, the record shows that a majority of the students who attended Roosevelt before it was closed were white, most of the Roosevelt students were assigned to a school within walking distance from their homes and 13 of the 25 students who were bussed were white while 12 were black; and (6) the Board considered two alternatives, one of which did not involve closing Roosevelt, before deciding to close the school, and plaintiffs offered no viable additional alternate plan.

■ Although cases involving the closure of predominantly black schools have placed a heavy burden on the defendants to defend their actions, the initial burden of presenting evidence of discrimination still falls upon the plaintiffs. *See Haney v. County Bd. of Educ.,* 429 F.2d 364, 371 (8th Cir. 1970). Plaintiffs in this case have not demonstrated that defendants abused their discretion in their utilization of District facilities when they closed Roosevelt. *See id.* at 372.

■ We do not believe the failure to reopen Carver constitutes a violation of the Acts. In presenting their case in the trial court and before us, plaintiffs did not rely extensively on the fact that Carver was not reopened. There is no evidence that a concrete proposal regarding Carver was

presented to the Board. The information before us is insufficient to allow us to second guess the Board or the trial court on this issue. Furthermore, even if plaintiffs had presented a stronger case, the Board probably would enjoy more discretion in deciding whether to reopen a school in a predominantly black area than in deciding whether to close a school that has been operating in the same area.

Finally, the evidence overwhelmingly demonstrates that the District has, during the relevant statute of limitations period, undertaken a diligent, good faith effort to attract minority teachers through a program which was approved by HEW in a letter dated November 25, 1975. It is true, as plaintiffs contend, that attempts to hire more black teachers and staff have not been particularly successful. The unsatisfactory results were, however, more than adequately explained by factors outside the control of the Board—the generally lower wages available in Oklahoma and the fact that black professionals prefer to live in areas with larger black populations.

In reviewing the findings and conclusions of a district court in a school desegregation case, we are bound by the standard of review required by Federal Rule of Civil Procedure 52. As such, "[u]nless we are satisfied that the trial court's findings are clearly erroneous we must defer to them." *United States v. Board of Educ., Independent School Dist. No. 1,* 459 F.2d 720, 723 (10th Cir. 1972), *vacated on other grounds,* 413 U.S. 916, 93 S.Ct. 3048, 37 L.Ed.2d 1038 (1973); *see Chambers v. Iredell County Bd. of Educ.,* 423 F.2d at 616. Under that standard of review and viewing the record as a whole, we affirm the trial court's conclusion that plaintiffs' evidence is insufficient to establish a violation of federal law in the closing of Roosevelt, failure to reopen Carver or the Board's minority hiring practices.

AFFIRMED.