MITCHELL, Velma and Mitchell, Garry and Clark, Marlene and Clark, Sharlene, a minor by her mother and natural guardian Marlene Clark, and Frazier, Hattie and Clark, Norman and Clark, Jr., Norman, a minor by his father and natural guardian Norman Clark and on behalf of themselves and on behalf of others similarly situated, Appellants,

v.

Mark A. McCUNNEY, individually and as President of the Board of School Directors, Southeast Delco School District, William A. Cubit, individually and as Vice President of the Board of School Directors, Southeast Delco School District, John H. Alexander, individually and as a member of the school Board of Directors, Southeast Delco School District, Harry A. Dunlap, individually and as a member of the School Board of Directors, Southeast Delco School District, Angelo M. LaBuono, individually and as a member of the School Board of Directors, Southeast Delco School District, Wilford L. Ottey, individually and as a member of the School Board of Directors, Southeast Delco School District, Barbara L. Whitsett, individually and as a member of the School Board of Directors, Southeast Delco School District, Franklin A. Yeager, individually and as a member of the School Board of Directors, Southeast Delco School District, and School Board of Directors, Southeast Delco School District, Defendants I,

v.

Peter A. LeDONNE, individually and as Superintendent of the Southeast Delco School District, Defendants II,

v.

Robert G. SCANLON, Secretary of Education, Commonwealth of Pennsylvania, Defendants III,

v.

Terrel H. BELL, Secretary of Education, Defendant IV.

No. 80–2237.

United States Court of Appeals, Third Circuit.

Argued May 19, 1981.

Decided May 29, 1981.

Roland J. Atkins, Philadelphia, Pa., for appellant.

Philip A. Ayers, Counsel for Dept. of Ed., Michael A. Davis, Chief Counsel, Pennsylvania Dept. of Ed., Harrisburg, Pa., for appellee Robert G. Scanlon, Secretary of Ed., Commonwealth of Pennsylvania.

James P. Turner, Acting Asst. Atty. Gen., Walter W. Barnett, Marie E. Klimesz, Department of Justice, Washington, D. C., 20530, for federal appellee.

Peter J. Nolan, Nolan & Semeraro, Media, Pa., for defendant I & II.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

A plaintiff class of black elementary school students and their parents residing in the southern portion of Darby Township appeals from a decision of the district court following a nonjury trial. The court rejected plaintiffs' claim that the Southeast Delco School District desegregation plan places an unconstitutionally undue burden on black students. Plaintiffs objected that the closing of the only elementary school in a predominately black neighborhood disproportionately affects black students, and therefore demonstrates that racial animus motivated the school board's decision to close the school. The district court held the school district had been de jure segregated prior to adoption of the disputed plan. It placed the burden on the school board to prove that its decision to close the school was not racially motivated. The court held the school board's evidence of age, physical deterioration, and unsafe conditions in and surrounding the school building, as well as the closing of a school in a predominantly white neighborhood, and the plan's provisions for reassigning both white and black students, satisfied the board's burden. We affirm.

I.

The Southeast Delco School District is located in Delaware County, Pennsylvania. It comprises the boroughs of Collingdale, Folcroft, Sharon Hill, and Darby Township.

Darby Township includes two noncontiguous divisions. The northern portion of Darby Township is located in the northwest corner of the District; the southern portion is located in the southeast corner. The boroughs of Collingdale and Sharon Hill separate the two portions of Darby Township. Southern Darby is predominantly black. The three boroughs and all of Northern Darby, with the exception of the Okeola area, are almost exclusively white. Before 1972, the boroughs and Darby Township maintained separate school systems.

In 1968, a Pennsylvania Common Pleas court order mandated desegregation of the Darby Township school system. Under the order, all students in grades 1–4 attended Darby Township Elementary School in northern Darby; students in grades 5–6 attended the Studevan School in southern Darby; high school students attended Darby Township High School in northern Darby.

A merger of the Collingdale, Folcroft, Sharon Hill, and Darby school systems in 1972 established the Southeast Delco School District. White students in the District continued to attend schools in their respective boroughs. Black students continued to be bussed from one end of Darby Township to the other, thus bypassing the schools located in the central white boroughs.

In 1977, the Pennsylvania Human Relations Commission requested the Southeast Delco School District to submit a desegregation plan. The District proposed a plan which included the option of closing the Pusey Elementary School in Collingdale, and the Studevan School in southern Darby. The Pusey School, built in 1914, is the District's oldest. The Studevan School is the only school in southern Darby. Built in 1929, it is the District's second oldest. The Commission approved a version of the plan which would have retained the Studevan School as a "magnet school" for exceptional children. After ascertaining that the "magnet school" feature of this version violated federal regulations, however, the Commission revoked its approval.

In spring 1979, the District school board voted to implement a desegregation plan closing both the Pusey and the Studevan schools. The school board maintains it determined to close these schools because of their age, and because of a drop in elementary school student population. The Studevan School, moreover, abutted a six-lane highway, shared a driveway with a bus depot, was 500 feet from a vermin-infested junkyard, and 1000 feet from petroleum storage tanks. The second floor of the school had been sealed off because of fire regulations. The exterior walls of the school were vandalized. The school's facilities were also inaccessible to the handicapped.

Although the Commission had not approved the 1979 plan, the plan's student assignment provisions substantially correspond to those in the plan the Commission had earlier approved. Under the enacted plan, most students from the boroughs continue to attend the same schools. Students from northern Darby attend Darby Township Elementary School (in northern Darby) for grades K–6, and Central Junior High School in Sharon Hill for grade 7. Southern Darby is divided into four assignment areas. Students from each area attend elementary and junior high schools in the boroughs nearest their area. Although the District affords bussing for elementary school students living more than 1.5 miles from their assigned schools, fewer students, both black and white, are bussed than were before implementation of the plan. Most students from southern Darby live within walking distance of their new schools.

## II.

The district court found that from 1972 to 1978, the Southeast Delco School Board had created and maintained a dual school system. It held that the schools were racially identifiable both in composition of students and in assignment of teachers. The student assignment policy retaining the 1968 distribution of Darby students had the foreseeable effect of creating racial imbalance. Bussing black students from one end of the District to the other strongly suggested the school board's improper purpose, especially since black students in the busses passed by white schools within walking distance of their homes.[1] See generally Columbus Bd. of Ed. v. Penick, 443 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979); Dayton Bd. of Ed. v. Brinkman (II), 443 U.S. 526, 99 S.Ct. 2971, 61 L.Ed.2d 720 (1979).

The court held the 1979 plan in most respects satisfied constitutional and federal statutory standards.[2] Plaintiffs, however, maintained the plan placed an unconstitutional burden on black students. They contended that the school board's decision to close the only elementary school in predominately black southern Darby was racially motivated. The board asserted that economic and educational, rather than racial, factors prompted the decision. The court held that when de jure segregation has been proved, the school board bears the "heavy burden" of demonstrating nonracial motivation for closing a predominately black school. It held the shift in burden appropriate because

the presumption aris[es] from the prior finding of de jure segregation that actions impacting more adversely on blacks than on whites are motivated by a discriminatory purpose and violate the Constitution. In Keyes [v. School District No. 1, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973)], the Supreme Court

1. The Board does not appeal this finding.

2. The court found the racial composition of Darby Township Elementary School in northern Darby too skewed. Overall enrollment roughly represented the District's racial balance, but the court noted that the composition of the kindergarten was 56% white to 44% black students, while in grades 1–6, the figures were 42% white to 58% black. The court also

observed that Darby Township Elementary was about one-half filled, while the Harris School in neighboring Collingdale was utilized almost to capacity. On August 1, 1980, the court accompanied its opinion rejecting plaintiffs' claim with an order to the school board to revise the desegregation plan for Darby Township Elementary. On August 25, 1980, it approved the board's revisions.

held that once segregation is found in a meaningful portion of the system, school authorities must demonstrate that segregation in other portions of the system did not also result from intentionally segregative acts. 413 U.S. at 209–10, 93 S.Ct. at 2697–98. By analogy, the Board should also be required to show that non-segregative acts that cause a greater burden on black students did not arise from continued use of improper considerations. Slip op. at 21.

The district court adopted the Court of Appeals for the Tenth Circuit's guidelines to analyzing minority school closings. *In Fitzpatrick v. Bd. of Ed.*, 578 F.2d 858 (10th Cir. 1978), that court enumerated six relevant factors.

> (1) The existence of valid nonracial educational reasons for closing school facilities located in predominantly black areas; (2) the condition and adequacy of the facilities at the school being closed; (3) whether the facilities to which the minority students were being transferred were adequate and whether the transfer would cause those facilities to be "overtaxed"; (4) whether the primary or sole reason for the school board's action was the fear that less segregation would lead to "white flight" from the school district; (5) whether the entire or primary burden of integration is placed on black students and teachers; and (6) whether the school board considered alternatives which did not require the closure of predominantly black schools before making a final decision. No one of these factors, standing alone, is necessarily determinative.

578 F.2d at 861–62 (citations omitted).

The district court held the age and unsafe conditions of the Studevan School satisfied the first two factors. It found the facilities in the reassigned schools adequate in physical conditions and space. It found considerations of "white flight" played no part in the board's determination. The court found further that Studevan's closing did not require southern Darby students to travel far from home. Most are within walking distance of their new schools; some live closer to them than to Studevan. The plan necessitates no bus trip longer than 15 minutes. More importantly, although the plan impacts somewhat more heavily on black students, it also inconveniences some white students. White students are bussed from northern Darby, for example, and the predominantly white Pusey school was also closed. Evaluating all the factors, the court held the board had met its burden of proving nonracial motivation for Studevan's closing.

Finally, the court rejected plaintiffs' additional argument that closure of Studevan denied its students the cultural experience of an all-black school. The district judge noted that this contention was in effect an attempt to reanimate the unconstitutional separate-but-equal principle. While the court expressed respect for plaintiffs' desire for "shared cultural experiences," it observed that "desegregation may go forward without sacrificing the cultural identity of any student." Slip op. at 25.

### III.

The phrase "neighborhood school" evokes more than geographical proximity to a student body. It prompts thoughts of a community center; a facility which represents the characteristics and qualities of the people that surround it. The essence of plaintiffs' complaint lies not in their allegation of burdensome reassignment, but in the loss of a school whose enrollment, like the population of southern Darby, overwhelmingly represented one racial group. The district court found that most southern Darby students incur no significantly greater transportation burden in attending their new schools than in attending Studevan. On the other hand, the dislocation of students through school closure involves more than transportation. In their new schools plaintiffs may risk social ostracism, see *Brice v. Landis*, 314 F.Supp. 974, 978 (N.D. Cal.1969), as well as the rancor of the residents of the community to which they trav-

el.[3] These concerns deserve added weight when the school closed is the only one in the minority community. Nonetheless, a racially identifiable neighborhood school should not remain open simply because the community asserts strong ties to it. See *Arvizu v. Waco Ind. Sch. Dist.*, 495 F.2d 499, 504 (5th Cir. 1974) ("student affinity for a school is not a practicality which ... can vitiate the command for the most effective desegregation decree").

Plaintiffs advance a more troublesome contention, however, when they allege that Studevan's closure was racially motivated.[4] Given the undisputed finding of prior de jure segregation in the Southeast Delco School District, as well as the disproportionate impact on blacks of closing the only neighborhood school, plaintiffs' contention appears at least facially plausible. We believe the district court was correct in placing the burden on the school board to prove that neutral and valid educational criteria motivated its decision to close the school. When segregation such as existed in the District is proved, and when the desegregation plan impacts more adversely on blacks than on whites, an inference may arise that a discriminatory purpose animated the board's decision. It is therefore appropriate to require the school board fully to refute that inference.

Other circuits have held that a school board desegregating a district maintains "a heavy burden to explain the closing of facilities used for the instruction of minority students." *Arvizu, supra,* at 505. Accord, *Fitzpatrick v. Bd. of Ed., supra; Haney v. County Bd. of Ed.*, 429 F.2d 364, 372 (8th Cir. 1970). See also *Felder v. Harnett County Bd. of Ed.*, 409 F.2d 1070, 1074 (4th Cir. 1969) (en banc) (board must explain why it determined to close all-black school). The Court of Appeals for the Tenth Circuit in *Fitzpatrick, supra,* provided guidelines to evaluating a school board's decision to close a school in a minority neighborhood. That court's opinion reflects a thorough and thoughtful distillation of principles derived from a long line of school closing cases. See, e. g., *Lee v. Macon County Bd. of Ed.*, 448 F.2d 746 (5th Cir. 1971) (fear of white flight does not justify closing); *NAACP v. Greater Johnstown Pa. Sch. Dist.*, 361 F.Supp. 1333 (W.D.Pa.1973) (physical deterioration justifies closing); *Brice v. Landis, supra* (when minority school being closed has adequate facilities, and white students are not bussed, closing not justified). The district court adopted and carefully applied those guidelines to hold the board had met its burden. We approve the district court's adoption of the *Fitzpatrick* standards. We hold, moreover, that the district court correctly evaluated the facts in light of the *Fitzpatrick* standards.[5]

3. In this case, the district court found that southern Darby students walking to Folcroft Middle School had met with verbal abuse from passers-by. Fact 38.

4. Racially motivated school closings are clearly unconstitutional. See, e. g., *Lee v. Macon County Bd. of Ed.*, 448 F.2d 746, 753–54 (5th Cir. 1971).

5. Plaintiffs press additional issues. They maintain that the district court should have certified a class including high school students. We reject that contention: the Studevan School included only grades 1–6. Moreover, the school board has received state approval to consolidate all of the District's high schools into a single building.

Plaintiffs also assert the district court should not have denied the Pennsylvania Human Relations Commission's motion to intervene. The Commission does not appeal this denial. Even

had plaintiffs standing to raise this issue, it is either too late or of no avail. The denial of intervention of right is immediately appealable. *McKay v. Heyison*, 614 F.2d 899 (3d Cir. 1980). Permissive intervention is within the district court's discretion. Because the Commission's plan would not have retained Studevan as a regular elementary school, it is difficult to discern what interest the Commission would have in a suit requesting Studevan's reopening. Under the circumstances, we cannot deem the district court's ruling an abuse of discretion.

Finally, plaintiffs claim the district court should not have dismissed the United States Dep't of Education and the Pennsylvania Sec'y of Education as defendants. Plaintiffs maintain they were proper defendants because both had an affirmative obligation to eradicate segregation in the District. This claim, too, is without merit. The district court found the board's desegregation plan meets constitutional

Studevan's closing does impact somewhat disproportionately on black elementary school students. As we held in *Evans v. Buchanan*, 582 F.2d 750, 760–61 (3d Cir. 1978), *cert. denied sub nom. Delaware St. Bd. of Ed. v. Evans*, 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980), a school board may not rectify its past illegal conduct by disproportionately burdening those whose rights it violated. Hence, the school board has an obligation to implement a student reassignment plan that will not dislocate black students significantly more than white students. Here, however, the board has shown that Studevan would have been closed no matter what the plan. The goal of achieving a fair and reasonably unburdensome desegregation plan does not oblige a school board to maintain or rehabilitate an unsafe and physically obsolescent school, especially when adequate and spacious schools are nearby.

## IV.

The judgment appealed from will be affirmed.

and federal statutory requirements. Because we uphold the court's finding, we also agree

these would-be defendants are not implicated in this suit.