Claude B. ROBINSON, et al, Plaintiffs,

United States of America,
Plaintiff-Intervenor,

v.

SHELBY COUNTY BOARD OF EDUCATION, Defendant.

No. 4916.

United States District Court,
W.D. Tennessee, W.D.

April 9, 1986.

R. Lee Winchester, Memphis, Tenn., for plaintiff.

Richard B. Fields, Memphis, Tenn., for defendant.

Zita Johnson-Betts, Litigation Section, U.S. Dept. of Justice, Washington, D.C., Attorney for plaintiff-intervenor Educational Opportunities.

## ORDER DENYING PETITION BY SHELBY COUNTY BOARD OF EDUCATION TO CONSTRUCT TEN PERMANENT ADDITIONAL CLASSROOMS AT LUCY ELEMENTARY SCHOOL

HORTON, District Judge.

On February 12, 1985, the Shelby County Board of Education (Board) petitioned this Court for approval of specifically requested modifications to its existing plan of desegregation for Shelby County schools for the 1985–86 school year.

The petition requested, among other things, that the Court approve the acquisition of property for a school site in the Bartlett area and construction of additional classrooms at Lucy Elementary, Riverdale Elementary, Farmington Elementary and Dogwood Elementary schools.

Plaintiffs, including plaintiff-intervenor United States of America, did not object to the proposed construction at Riverdale, Farmington and Dogwood Elementary schools. There is no objection to the proposed acquisition of a school site in the Bartlett area. There is no objection to the planned renovation at Lucy Elementary to meet fire and safety codes. There is, however, serious objection by the United States to the Board's plan to construct ten (10) additional permanent classrooms at Lucy Elementary to replace portable classrooms now being used at that school.

In order to resolve the issues raised by the Board's petition requesting permission to construct ten additional permanent classrooms at Lucy Elementary, and the plaintiffs' objections thereto, the Court scheduled a hearing and thereafter requested the parties to submit proposed findings of fact and conclusions of law. Upon consideration of the Board's petition, the Court concludes, after reviewing the entire record, that the petition must be denied. The Court will, however, accept the suggestion of the United States, and require the Board to submit to the Court a student assignment plan to relieve overcrowding at Lucy Elementary for the 1986–87 school year.

The undisputed evidence in this case is that the Shelby County Board of Education has apparently failed in its constitutional duty. The evidence shows the Board's professional staff presented this construction proposal for Lucy Elementary as a part of its capital improvement program and no discussion was held by the Board regarding its impact upon the existing desegregation plan. This is a dereliction by the Board of its constitutional duty.

The preponderance, in fact the overwhelming, evidence in this case leads to three significant findings by the Court:

1) Construction of ten additional permanent classrooms at Lucy Elementary School will perpetuate that school as a predominately white school contiguous to a number of underutilized

schools, each having significantly greater black student enrollment.

2) The impact of constructing ten additional permanent classrooms at Lucy Elementary upon the Board's existing plan for desegregation of Shelby County schools has never actually been considered by the Board. In fact, it appears from the undisputed evidence in the record that the Board, as a Board, has never even discussed the subject. This fact represents a serious neglect by the Board in fulfilling its constitutional duty. "The Supreme Court has repeatedly stated that where a school system has been segregated by law, that system has an affirmative duty to eliminate all vestiges of segregation 'root and branch.' Until a school system has discharged its duty to liquidate the dual system and replace it with a unitary one, the school's duty remains in place. Until a unitary system is created, a school system is not absolved from this duty by reason of demographic changes." *Vaughns v. Board of Education of Prince George's County*, 758 F.2d 983, 988 (4th Cir.1985) (citations omitted).

3) The Board has apparently accorded its concept of "community pride" a higher standing than its constitutional duty to eliminate all vestiges of segregation within the Shelby County school system.

*Position Of The Board*

It is the position of the Board that the proposed classroom additions will have no effect whatsoever upon the status of desegregation within the county school system and are necessitated by growth patterns and population shifts that have occurred within the system.

Further the Board's counsel, in his statement to the Court, said:

It is our theory that this Lucy Elementary School was reviewed thoroughly back when the original plan was submitted, and basically remained a small neighborhood white school for all practical purposes, the same zone lines all the way through up through the Court of Appeals in Cincinnati and back and has been a viable and fine small community school.

(Tr. 7)

*Position Of The United States*

The United States argues the Board's plan to construct ten additional classrooms at Lucy Elementary not only adversely affects the status of desegregation in Shelby County schools but also ignores available options that would further desegregation in Shelby County schools. In its response to the Board's petition, the United States informed the Court and the Board, in substance, as follows:

The United States has serious concerns regarding defendant's plan to construct ten additional classrooms at Lucy Elementary, a school located in northwest Shelby County with a student racial composition that is ninety-three percent (93%) white. Our analysis reveals that the proposal to construct additional classrooms at Lucy Elementary not only adversely effects the status of desegregation in the district but also ignores available options that would further desegregation in this district which has never suggested that it has fully implemented its desegregation plan nor moved this court that it·be declared unitary. The decision to construct additional classrooms at Lucy as a means of relieving overcrowding avoids the utilization of unused classroom space at contiguous elementary schools with significant minority enrollment. Although the defendant has reassigned students to contiguous schools to relieve overcrowding in situations where both the sending and receiving schools were overwhelmingly white, the defendant has refused to use reassignment as an alternative at Lucy. Instead the defendant placed portable classrooms at Lucy and now proposes that permanent classrooms be constructed in replacement, in spite of the fact that classroom space is available at nearby Woodstock, Millington South,

and Millington East Elementary Schools. When counsel for the United States asked school officials why reassignment of Lucy students to contiguous space was not proposed, counsel was informed that when reassignment was discussed, parents of Lucy students expressed a preference for preserving their "community identity" by keeping Lucy students together rather than having them reassigned to contiguous schools.

Had the defendant chosen to reassign students to any of these contiguous schools, desegregation in those schools would have been promoted: Woodstock Elementary School, whose student body is 36% black, has an identical grade structure to Lucy and facilities which are generally newer. Both Millington South and Millington East, whose student bodies are 27% and 18.5% black respectively, are generally in better physical condition than Lucy, part of which was built early in this century and is currently in need of renovation to meet state fire and safety code requirements.

School districts, like Shelby County, which operate under an unsatisfied duty to eliminate a dual system, bear a continuing duty to do all that is in their power to eradicate vestiges of the dual system. Desegregation is not automatically achieved once a constitutionally acceptable plan is adopted. School authorities must implement the plan in good faith and refrain from subsequent action inconsistent with achieving the "racially neutral attendance pattern" that the plan was designed to establish. Proposed revisions or amendments to a desegregation plan must be judged on the basis of their effect upon desegregation in the district and whether they will contribute to the establishment of a unitary system of education. Accordingly, the defendant's recommended modifications must be appraised in light of present conditions and experience, to assure that they will not frustrate the goal of unitariness for the district's public school system.

As presently proposed, Shelby County's plan to construct additional classrooms at Lucy will ensure that students attending the predominantly white school will not be reassigned to contiguous schools with significantly greater black student enrollments, even though these schools have unused classroom space available. In essence, the defendant's plan to remedy overcrowding at Lucy favors an approach that ensures racial isolation over feasible alternatives that promote desegregation. Clearly, such a proposal does not satisfy constitutional requirements and, therefore, should not be approved.

*Testimony*

Mr. James Anderson, Superintendent, Shelby County Board of Education, testified the Board has six portable classrooms at Lucy Elementary School housing roughly 150 children. The other children enrolled in the school attend classes in the main building. When asked by the Board's counsel, Mr. Lee Winchester, why, in his opinion, classrooms should be added at Lucy rather than amending school boundary lines to send children to other schools, Mr. Anderson responded:

A. Your Honor, the problem that the school system is faced with is a situation that has occurred at Lucy over a period of several years, and it has been a gradual growth in that particular district. The growth was such and at such a small rate that initially few portable classrooms were necessary. Over a period of time the growth continued and at this point in time we have need for six portable classrooms on that site. There is nothing particularly wrong educationally with using a portable classroom. I think it is the feeling of the school system it would be much better if we had permanent facilities.

Very likely, if that situation remains intact, that children could spend two or three years in a portable classroom as opposed to a regular school building. That did not appear to be in the best interest of the students.

The system felt like that with the renovation of the building, because it is an old building and that needed to be done, and the building of the ten additional classrooms, that that would relieve the portable situation in its entirety and perhaps allow for a gradual growth in that school district for at least a few years.

You concurrently have slightly over four hundred students on campus. Renovated facilities, if you were able to recoup the current rooms and add the ten classrooms, would allow you to have a school probably five hundred and fifty to six hundred. That would allow the district to grow gradually for several years.

You have a very stable school situation at Lucy. It is an old school, a great deal of community pride in that particular school. It has been the focus of the community. It's different in the sense that it is not part of an incorporated town, there are not many other social activities in that area that draw people together and so, for whatever the reasons, the school has been kind of central, central point for the community over the years.

I think that you have had strong public school support and leadership out of the community. They have had a great many people that have been active in PTA's and other activities. Have a very sound school program.

To my knowledge there is no racial discord nor has there ever been.

It's a physically attractive site, probably one of the most attractive school sites in Shelby County.

In taking all of this into consideration, and a desire not to change boundries, because that does create concern on the part of parents, it was felt like that the plan to renovate and to add the additional classrooms was both needed and justified and in the best interest of the school and the community.

(Tr. 18–19).

When asked by counsel for the United States, Ms. Zita Johnson-Betts, to define community pride, Mr. Anderson answered:

A. It's an area in which the adult community has still maintained an interest in the school even though the children of many of the adults are no longer there. They seem to have taken pride and interest in the school when their own children were there and have held on to that.

Q. How would you compare the community pride at Lucy with the community pride at Woodstock?

A. I would say probably that the pride there is greater, at Lucy is more established.

(Tr. 22).

Responding to whether community concern was a consideration in deciding whether to construct additional classrooms, Mr. Anderson said:

A. It is a condition, whether it is a factor or not, that would influence the final decision I guess remains to be seen, but it is something that I think from a school standpoint is healthy when you have this condition and when parents are interested in the school and are supportive of the school, that the—there is a responsiveness that the school system would like to continue and like to meet.

School systems, as I am sure you are well aware, are interested in getting total support from the community.

(Tr. 24).

Mr. Anderson testified the Board does consider the effect a proposal has upon the desegregation plan in effect at a school:

A. I think that, yes, that they would be aware of it.

Q. How would they be aware, Mr. Anderson?

A. Well, there would be an interest on their part in terms of what affect it would have upon the student enrollment of the school.

Q. I'm not certain that I understand?

THE COURT: Let him finish his answer, please.

A. I think that the board would not want to do anything that would be considered in opposition to the court order or to any plan or to have anything that

would have a negative effect upon segregating the school or the plan of desegregation.

Q. Do you know, Mr. Anderson, whether or not that is a routine consideration in deciding whether or not a particular proposal should be approved, the effect on the desegregation plan?

A. I think that it is a condition again that the board would be required to review and knowing that their decision would also be reviewed by the Legal Defense Fund and the Justice Department.

(Tr. 25).

*Mr. Ward L. Harvey*, immediate past Superintendent, Shelby County Board of Education, testified the proposal to add additional classrooms at Lucy School was part of the Board's Capital Improvement Program (Tr. 47). He said it was his intent to add enough classrooms to eliminate the portables and leave the boundary lines as they presently are (Tr. 48). Mr. Harvey said he had met with the PTA board at Lucy to discuss overcrowding. While he said he had suggested alternatives, he said he did not recommend that any of those alternatives be accomplished (Tr. 52). Further, he testified:

A. I don't recall a specific meeting, but I am sure that information was known in the community. I met with them annually for three or four years about the overcrowding condition. Now, whether I discussed with them what I proposed to the board, I don't recall the exact discussion.

Q. When you met with parents with Lucy students regarding the overcrowding at Lucy, I take it in reference to the placement of portables at Lucy Elementary, is that correct?

A. Partially.

Q. Would you clarify?

A. I say that is partially what I met with them for to discuss the situation as I saw it at that time for the following year.

Q. Did you discuss other alternatives to the placement of portables with the Lucy parents?

A. Only as I indicated earlier that the possibility at one time of maybe moving the 7th and 8th grade to Millington Middle school.

Q. No other alternatives were discussed with the parents of Lucy students regarding other alternatives to relieve overcrowding at the school?

A. I don't recall discussing them with the community, I told you that I considered some other alternatives but I don't recall further discussion with the community.

Q. What was the response of the community, what was the response of the Lucy parents with whom you met concerning the placement of portables at Lucy Elementary School?

A. They were favorable to that suggestion.

Q. Was that a factor in your decision to propose the additional construction of classrooms at Lucy Elementary?

A. Well, I don't know exactly what the intent of your question is but certainly their desire to maintain a community school and my desire to help them maintain it caused me to make that recommendation.

When you take a school, such as Lucy out of the community, you have destroyed every vestige of community spirit that they may have. People have two or three choices of churches to go to, there is nothing else for them to relate to other than school. So, there is never any consideration given on my part to abandon the school if that's what you are considering as an alternative.

(Tr. 63–64).

When asked what effect the placement of portables at Lucy and other schools in the district has had upon the Board's desegregation plan, Mr. Harvey said:

A. I don't think it had any effect.

Q. If there were no portables placed at Lucy Elementary, would the increased numbers of student have been able to attend Lucy Elementary?

A. No, but I don't, I don't recognize that that has any effect on the percentage of black and white children in a school if that is what you are trying to say. The change at Lucy in the black and white makeup of the school is not any different than what has occurred in every school in Shelby County and probably to a lesser degree than most places.

Q. Yet in this situation, Mr. Harvey, portables were in fact placed at a school which artificially expanded the capacity of the school in years when there was space available at contiguous schools, schools with significantly greater black student enrollments and that makes the situation a little different, doesn't it?

A. No, not in my opinion.

Q. Mr. Harvey, did you ever make an alternative proposal for relieving overcrowding at Lucy Elementary School that did not involve the additional construction of classrooms at Lucy Elementary?

A. I indicated earlier that I didn't recall any alternative that I had considered other than the possibility of the 7th and 8th grade to Millington Middle school.

(Tr. 68–69).

*Mr. Roland T. Woodson,* Vice-Chairman of the Shelby County Board of Education and a Board member for twelve plus years, testified he has missed only two called meetings and no regular meetings of the Board in twelve years. Mr. Woodson said that during his twelve years on the Board, proposals were not discussed in terms of desegregation or integration but were presented as capital improvements.

### REDIRECT EXAMINATION

BY MS. JOHNSON–BETTS:

Q. Mr. Woodson, when proposals for amendments to desegregation plans have been presented to the Shelby County Board, have you been one to inquire

about the effect of those proposals on the desegregation plan for the district?

A. In my recollection I do not recall any resolution presented that had the words desegregation or integration in them. They were not presented in that fashion. The ones that I recall were presented as capital improvement, expanding the school building or placing portables. I never had any discussion or do I have any recollection of any of this being presented with the purpose being desegregation of the school system.

(Tr. 93–94).

Having made its own independent determination of fact and law in this case, the Court adopts the following proposed findings of fact and conclusions of law which were submitted by the United States:

### FINDINGS OF FACT

1. The Shelby County School Board adopted a resolution on May 31, 1984, at the recommendation of then Superintendent Harvey, authorizing construction of ten additional classrooms at Lucy Elementary for the 1985–86 school year to accommodate excess student enrollment at that school (Tr. 86–87).[1] Capital outlays of $500,000.00 were approved for additional construction to and renovation of Lucy Elementary (Lucy) (Exh. B to Defendant's Petition).

2. As of school year 1984–85, the enrollments, grade structures, and capacities of selected Shelby County public schools were as follows (Gov. Exh. No. 3, page 2):[2]

| | Grade | Capacity | % Black | % White | Total En. |
|---|---|---|---|---|---|
| Lucy | K–8 | 242 | 6.5 | 93.5 | 416 |
| Woodstock | K–8 | 1056 | 36 | 64 | 746 |
| Millington South | K–6 | 660 | 27 | 73 | 487 |
| Millington East | K–6 | 682 | 18.5 | 81.5 | 563 |
| Millington Middle | 7–8 | 594 | 19 | 81 | 507 |
| Mt. Pisgah | K–8 | 880 | 22 | 78 | 1018 |
| Farmington | K–8 | 880 | 7 | 93 | 931 |
| Riverdale | K–8 | 946 | 9 | 91 | 912 |

1. Throughout this pleading, the designation "Tr." followed by a page number will be used to refer to the appropriate page of the July 31 hearing transcript.

2. We have used the designation "Gov.Exh. No." followed by a number to refer to a particular exhibit of the United States admitted into evidence at the July 31 hearing.

3. Woodstock, Millington South, and Millington East Elementary schools have attendance zones contiguous to that of Lucy (*Robinson v. Shelby County Bd. of Education,* 467 F.2d 1187, 1206–07 (6th Cir.1972) (map of district under 1971 district court order).

4. It is possible to relieve overcrowding at Lucy by reassigning approximately 150 students presently housed in six portable classrooms (Tr. 16) to underutilized contiguous schools: Woodstock Elementary, currently more than 300 students below capacity; Millington South Elementary, approximately 170 students below capacity; and Millington East Elementary, 119 students below capacity (Gov.Exh. No. 3, page 2).

5. Lucy Elementary is located five miles from Woodstock and Millington South, and eight miles from Millington East Elementary School (Tr. 79–81) (Gov.Exh. No. 10). The close proximity of these schools to Lucy makes reassignment an administratively feasible and educationally sound alternative requiring no greater transportation of students than is presently required.

6. In 1984–85 the percentage of black students enrolled at Woodstock, historically a black school under the dual system of public education in Shelby County, exceeded the district-wide average—15 percent—for black students by 21 percentage points (Tr. 38–39), while the percentage of black students enrolled at Lucy, historically a white school under the dual system, fell below the district-wide average by 8.5 percentage points (Gov.Exh. No. 3, page 2).

7. Enrollments for academic years 1978–79 through 1984–85 and projected enrollments for the 1985–86 school year at selected Shelby County schools are as follows (Gov.Exh. Nos. 1, and 4–9):

| | 78–79 | 79–80 | 80–81 | 81–82 | 82–83 | 83–84 | 84–85 | *85–86 |
|---|---|---|---|---|---|---|---|---|
| Woodstock | 1193 | 848 | 881 | 830 | 834 | 749 | 746 | 708 |
| Millington South | 650 | 717 | 553 | 525 | 511 | 529 | 487 | 472 |
| Millington East | 732 | 675 | 677 | 669 | 597 | 493 | 563 | 616 |
| Millington Middle School | 608 | 570 | 522 | 512 | 528 | 496 | 507 | N/A |
| Northaven Elem. | N/A | 349 | 345 | 375 | 325 | 419 | 414 | N/A |

8. Adequate space is presently available and has been available at schools contiguous to Lucy to accommodate excess numbers of students enrolled there. Enrollment at Woodstock and Millington South Elementary schools has been declining for at least five years, and enrollment projections for the 1985–86 school year indicate continued decreases in enrollment at both schools (Tr. 22, 38) (Gov.Exh. Nos. 6–9).

9. It is appropriate to use the defendant's capacity figures to measure the present functional ability of a school to accommodate additional numbers of students because the defendant has traditionally relied on capacity figures to justify its need for additional space in its petitions and reports to the Court (Tr. 58).

10. Reassignment of excess Lucy students to contiguous schools, Woodstock, Millington South or Millington East, would increase the number of white students attending those schools (Tr. 35), thereby, promoting further desegregation.

11. Reassignment of excess Lucy students would, most likely, reduce the percentage of white students at Lucy (Tr. 36), thus promoting further desegregation at this predominantly white school.

12. The community spirit or involvement experienced at Lucy is not unique within the Shelby County School system (Tr. 65). After as little as a year of attending a new school, children and their parents can become accustomed to a new school's community spirit or environment (Tr. 66–67), should reassignment to a new school become necessary.

13. Under the school desegregation plan implemented pursuant to this Court's 1971 order, Lucy was projected to have an enrollment 75 percent white and 25 percent black (*Robinson v. Shelby County Bd. of Education,* 330 F.Supp. 837, 847 (D.W.D. Tenn.1971)).

14. Since 1978, when defendant first began to place portable classrooms at Lucy (Tr. 71), enrollment at Lucy has increased approximately 30 percent; in addition, the percentage of white students enrolled at Lucy has increased to almost 94 percent

(Gov.Exh. No. 3, page 2, and No. 9) from 87 percent in 1978.

15. The defendant admits that the construction of ten additional classrooms at Lucy will result in an increase in the number of white students who will enroll there, thus increasing the percentage of white students at an already predominantly white school (Tr. 42–43).

16. The construction proposed for Lucy will expand the school's capacity well beyond the 416 students currently enrolled to accommodate as many as 600 students (Tr. 18). Considering Lucy's past rate of growth (Tr. 18), and the fact that no new housing development is anticipated for this attendance area (Tr. 46), construction of ten additional classrooms at Lucy will serve to perpetuate Lucy as a predominantly white school contiguous to a number of underutilized schools, each having significantly greater black student enrollment.

17. Past Superintendent Harvey met with parents of Lucy students approximately seven years ago to discuss the overcrowded condition of the school and the possibility of reassigning Lucy seventh and eighth grade students to Millington Middle School (Tr. 71).

18. Lucy parents were opposed to the alternative of reassigning seventh and eighth grade Lucy students to Millington Middle School. Because of this opposition, past Superintendent Harvey agreed to continue to place portables at Lucy, regardless of the effect on desegregation (Tr. 52, 64, 71).

19. Past Superintendent Harvey testified that he considered reassigning Lucy students to Woodstock, but dismissed the idea because he believed that enrollment at Woodstock would increase and that reassignment would only be a one year arrangement (Tr. 55). Enrollment at Woodstock, however, has not increased and there is no indication that it will increase in the future. Mr. Harvey offered no justification for his belief that enrollment at Woodstock might increase, and there is nothing in the record to support his belief.

20. Even though Mr. Harvey considered a renovated shop classroom at Woodstock inappropriate for a K–8 situation (Tr. 59), as past Superintendent, he expressed no concern about his decision to continue to use Lucy as a K–8 school, despite its numerous fire, safety, and building code violations: more violations than any school in the district (Tr. 48).

21. In 1978–79 Woodstock accommodated as many as 1193 students (Gov.Exh. No. 9) (Tr. 39).

22. To relieve overcrowded conditions at Woodstock in 1978–79, the defendant opened Northaven Elementary, K–3, and reassigned some Woodstock students to that school (Tr. 61–62).

23. Northaven opened with a student population that was 8.6 percent black. At Woodstock that same year the percentage of black students increased approximately four percentage points (Gov.Exh. Nos. 8, 9).

24. The growth anticipated in the Northaven attendance area failed to occur; in fact, there has been no additional growth in the Northaven/Woodstock attendance areas, and, in some instances, enrollment has actually dropped (Tr. 51).

25. Neither Superintendent Anderson nor past Superintendent Harvey are aware of any plans for future growth or development in the Woodstock attendance area (Tr. 26, 54).

26. The defendant is not aware of any plans by the City of Memphis to annex any portion of the Woodstock attendance area (Tr. 40).

27. The defendant operated a number of small K–8 elementary schools in 1984–85. Arlington Elementary, for example, enrolled 241 students (Tr. 40) and E.E. Jeter enrolled 262 students (Gov.Exh. No. 3, page 2). Lucy Elementary would, similarly, enroll approximately 240 to 260 students if the defendant had not allowed the capacity of the school to expand artificially (Tr. 40).

28. In 1985 the Shelby County Board of Education (the Board) considered a propos-

al to reassign some students from Mt. Pisgah Elementary to two contiguous schools, Farmington and Riverdale Elementary to relieve overcrowding at Mt. Pisgah in the 1985–86 school year (Tr. 31–32).

29. The redistricting proposal considered for Mt. Pisgah would have reduced the percentage of white students at Mt. Pisgah, a historically black school that is currently 22.4 percent black, and increased the percentage of white students at the predominantly white receiving schools, Farmington and Riverdale (Tr. 34).

30. As a result of community opposition to the redistricting proposal for Mt. Pisgah, the Board decided to construct additional classrooms (Tr. 33) to replace portables at this school (Tr. 41).

31. Prior to the time the Board withdrew from consideration the redistricting proposal for Mt. Pisgah, Superintendent Anderson, as well as a number of Mt. Pisgah community members, discussed with the Board the segregative effect of the redistricting proposal (Tr. 35).

32. A consideration in deciding how to relieve overcrowding at a particular school may include the speed with which the relevant attendance area has grown. Rapid growth in the Mt. Pisgah attendance area, however, did not favor selection of one approach over another, *i.e.,* either the redistricting approach or the construction of additional classrooms approach (Tr. 32–33).

33. Construction of additional classrooms at Mt. Pisgah will further desegregation at Mt. Pisgah. School officials anticipate continued growth of the predominantly white housing subdivisions in the Mt. Pisgah attendance area which will, therefore, increase the number of white students attending Mt. Pisgah (Tr. 34).

34. Past Superintendent Harvey did not believe that it was his responsibility to consider the effect on desegregation of his proposal to construct additional classrooms at Lucy (Tr. 67–68).

35. Past Superintendent Harvey believes that it is his responsibility and the responsibility of the Shelby County Schools to avoid disappointing parental expectations regarding the school that their child will attend (Tr. 54, 65–66), even when to do so will mean that adequate consideration is not given to the district's primary obligation to consider the impact of its actions on desegregation in the district.

36. Past Superintendent Harvey failed to consider the impact of constructing additional classrooms on desegregation at Lucy, or the schools contiguous to Lucy, and permitted community opposition to be a decisive factor in his decision to propose additional classroom construction at Lucy (Tr. 64). In both the Lucy and Mt. Pisgah situations, Mr. Harvey chose the more segregative alternatives to relieve overcrowding.

37. The Board did not consider the effect on desegregation at Lucy of constructing additional classrooms at that school (Tr. 87, 93).

38. The Board was not informed at the time it considered the proposal to construct additional classrooms at Lucy that unused classroom space was available at contiguous Woodstock, Millington South or Millington East Elementary schools (Tr. 89).

39. The Board did not consider other alternatives for relieving overcrowding at Lucy before adopting then Superintendent Harvey's recommendation to construct additional classrooms there (Tr. 88–89).

40. The Board conducted no independent investigation of the recommendation submitted by then Superintendent Harvey for Lucy Elementary (Tr. 87). In fact, Board members routinely accepted then Superintendent Harvey's proposals for amendments to the district's desegregation plan without independent investigation by the Board (Tr. 87).

## CONCLUSIONS OF LAW

1. The Shelby County Board of Education (Shelby County) previously operated a dial system of public education that, al-

though dismantled by court order in 1971,[3] has never been declared unitary.[4] As a non-unitary school district, it bears a continuing duty to eliminate all vestiges of the dual system and to refrain from taking actions which serve to reestablish the dual system. *See Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 21, 91 S.Ct. 1267, 1278, 28 L.Ed.2d 554 (1971); *Vaughns v. Board of Education of Prince George's County*, 758 F.2d 983, 988 (4th Cir.1985) (citation omitted); *Davis v. East Baton Rouge Parish School Board*, 721 F.2d 1425, 1436 (5th Cir.1983) (citation omitted).

2. Adoption and implementation of a constitutionally acceptable desegregation plan did not automatically desegregate the Shelby County schools. *Davis v. Board of Education of North Little Rock Arkansas*, 674 F.2d 684, 689 (8th Cir.1982) (citation omitted); *see also Pitts v. Freeman*, 755 F.2d 1423, 1426 (11th Cir.1985).

3. School officials must implement the plan in good faith and refrain from subsequent action inconsistent with achieving the "racially neutral attendance pattern" that the plan was designed to establish. *See Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 437, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976).

4. The district court recognized in 1971 that it was the court's duty to retain jurisdiction of this case to consider the effect of future plans by the school board, including construction plans, on resegregation of the district. *Robinson v. Shelby County Board of Education*, 330 F.Supp. 837, 842 (D.W.D.Tenn.1971).

5. The defendant's proposed amendments or revisions to the approved desegregation plan, therefore, must be judged in light of their effect on desegregation in the district and whether they will contribute to the establishment of a unitary system of public education. *See Davis*, 674 F.2d at 687; *Robinson*, 330 F.Supp. at 842.

6. The defendant's acquiescence to the Lucy community's desires, the community having expressed opposition to the possibility of reassignment, cannot justify the defendant's failure to consider the negative impact of its proposal for construction of additional classrooms on desegregation at Lucy. *See generally Mitchell v. McCunney*, 651 F.2d 183, 187–88 (3d Cir.1981) (a racially identifiable school should not remain open simply because the community asserts strong ties to it); *U.S. v. DeSoto Parish School Board*, 574 F.2d 804, 817 (5th Cir.1978) (analogized Board's duty in regard to community resistance to effective desegregation measures to the Board's duty in regard to faculty resistance to such measures).

7. The defendant, therefore, cannot assert as a valid justification for its failure to resolve overcrowding in a manner that would promote further desegregation at Lucy, fears of community opposition to any alternatives but those that in effect will not promote desegregation, but will in fact perpetuate the racial identifiability of the Lucy school.

8. The defendant, having shown no valid reason for disregarding its primary obligation to consider the impact of proposed modifications on desegregation and to refrain from acting in a manner that impedes establishment of a unitary school district, should be denied its request for permission to construct additional classrooms at Lucy Elementary School.

9. The defendant should be required to relieve overcrowding at Lucy in a manner that, to the extent possible, furthers desegregation in the Shelby County school district.

It is therefore by the Court ORDERED:

1) The petition of the Shelby County Board of Education for approval of its

---

**3.** *Robinson v. Shelby County Board of Education*, 330 F.Supp. 837 (D.W.D.Tenn.1971), *aff'd*, 467 F.2d 1187 (6th Cir.1972).

**4.** The defendant has never suggested to the Court that it has fully discharged its duty to convert its formally dual system into a unitary one nor has it moved this Court to be declared unitary pursuant thereto.

plan to construct ten (10) additional permanent classrooms at Lucy Elementary School is denied; and

2) The Shelby County Board of Education is directed to submit to this Court on or before July 31, 1986, a student reassignment plan to relieve overcrowding at Lucy Elementary School for the 1986–87 school year.